| | |
|---|---|
| ANDREW J. C. KUNIAN, LOIS R. KUNIAN, KEITH BAINBRIDGE, KENT A. STRONG, And EZA A. GADSON as Representative of Estate of JAMES BOYD GADSON,<br><br>Plaintiffs,<br><br>v.<br><br>FRANCIS X. SMOLLON, COLIN B. WILLIAMS, EOS LNG GROUP LLC, EOS INVESTMENT GROUP LLC, ZUBIN KHAMBATA, TILDEN ENERGY LLC, SFXS MARKETING GROUP LLC, EAGLE POINT ENERGY HOLDINGS LLC,<br><br>Defendants. | Case No. 18-cv-12256-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                                 May 13, 2019

## I.     Introduction

Plaintiffs Andrew Kunian, Lois Kunian, Keith Bainbridge, Kent Strong and Eza Gadson, as representative of the estate of James Boyd Gadson, (collectively, "Plaintiffs"), have filed this lawsuit against Defendants Francis Smollon, Colin Williams, Eos LNG Group LLC ("Eos LNG Group"), Eos Investment Group LLC ("Eos Investment"), Zubin Khambata, Tilden Energy LLC ("Tilden Energy"), SFXS Marketing Group LLC ("SFXS") and Eagle Point Energy Holdings LLC ("Eagle Point") (collectively, "Defendants") alleging breach of contract (Count I), breach of fiduciary duty (Count II), aiding and abetting breach of contract and breach of fiduciary duty

(Count III), civil conspiracy (Count IV) and fraudulent transfers (Count VI)  D. 1-1.  Count V requests a declaratory judgment and Count VII is an action to reach and apply the equity interests of Eos Investment and Eos LNG Group.  Id.  All Defendants except Zubin Khambata[1] have moved to dismiss for lack of personal jurisdiction and improper venue.  D. 6.  For the reasons stated below, the Court ALLOWS the motion to dismiss for lack of personal jurisdiction.

## II.    Standard of Review

In ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without holding an evidentiary hearing, a district court must apply the prima facie standard of review.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, Plaintiffs must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."  Id. (citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)).  The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings.  Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  In doing so, the Court will "not credit conclusory allegations or draw farfetched inferences."  Ticketmaster, 26 F.3d at 203.  The Court bears in mind that Plaintiffs "must do more than simply surmise the existence of a favorable factual scenario; [they] must verify the facts alleged through materials of evidentiary quality."  Killion v.

---

[1] According to Defendants, Zubin Khambata has not been served in this case.  D. 6 n.1.  He, therefore, is not a party to the motion to dismiss.  Id.  For the remainder of this opinion, the Court will refer to the moving Defendants—namely, all Defendants except Khambata, as "Defendants."

Commonwealth Yachts & Mainship Corp., 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (quoting

Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001)). "Thus, allegations in a lawyer's brief or

legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to

establish jurisdictional facts." Id. (quoting Barrett, 239 F.3d at 27). The Court is also required to

"add to the mix facts put forward by the defendants, to the extent that they are uncontradicted."

Mass. Sch. of Law, 142 F.3d at 34.

## III.     Factual Background

This dispute concerns the anticipated construction of import and export facilities for

liquified natural gas ("LNG") in Texas and Chile.

### A.     <u>Joint Venture Formation and Structure</u>

In 2012, Plaintiff Andrew Kunian ("Kunian"), who was later joined by other Plaintiffs and

Defendants, began work to set up a business to export LNG from the United States to other

countries. D. 1-1 ¶¶ 1, 30; D. 7 at 3. In 2013, Kunian secured a location for an export terminal in

Brownsville, Texas and obtained a permit to export LNG from the Department of Energy. D. 1-1

¶¶ 2, 32; D. 7 at 3. Between 2012 and 2014, Kunian created two limited liability companies: Eos

LNG, LLC ("Eos LNG") and Eos Infraestructure, LLC ("Eos Infraestructure") (collectively, the

"Kunian companies"). D. 1-1 ¶ 2. The Kunian companies are registered in Delaware and have

principal places of business in Massachusetts, D. 1-1 ¶ 34; D. 12-1 at 5; D. 12-2 at 5, but are not

parties to this lawsuit, see D. 7 n.2.

In 2014, Kunian contacted Defendant Colin Williams ("Williams") through LinkedIn. D.

6-3 ¶ 2; D. 6-3 at 6; D. 12 ¶ 15. Kunian offered Williams an interest in the Kunian companies,

which he had already formed by that time. D. 6-3 ¶ 3. According to Kunian, it was Williams who

suggested the two men meet to discuss the LNG venture. D. 12 ¶ 15; see D. 1-1 ¶ 36. Williams

accepted Kunian's offer to join his business enterprises without traveling to Massachusetts.  D. 6-3 ¶ 4.  Williams ultimately finalized his interest in Eos Infrastructure, but not in Eos LNG.  Id. In 2014, Defendant Francis Smollon ("Smollon") also became involved with Kunian's efforts to export LNG from Texas to Chile.  D. 6-2 ¶ 3.  According to Kunian, a mutual contact introduced Kunian and Smollon in 2013, D. 12 ¶ 7, and Smollon expressed interest in joining Kunian's LNG ventures, D. 1-1 ¶ 36.  Smollon accepted Kunian's offer to acquire an interest in the Kunian companies without traveling to Massachusetts.  D. 6-2 ¶¶ 4-5.  In February 2015, Kunian and Plaintiffs James Gadson and Kent Strong, who had also joined Kunian in his business ventures, transferred portions of their equity interests in Eos LNG to Smollon.  D. 1-1 ¶ 38.  Shortly thereafter, Williams assumed the title of president and managing partner of Eos LNG despite never formalizing his equity interest.  D. 1-1 ¶ 39.  Williams was designated President of Eos Infraestructure and Smollon became Secretary-Treasurer.  D. 11 at 8.

In 2015, two major business milestones occurred for the Kunian companies.  First, Kunian and Smollon negotiated three agreements at issue in this case in Chile.  D. 1-1 ¶ 5; D. 7 at 3.  Those agreements were a Terminal Development Agreement, an exclusive LNG Supply Agreement and an LNG Terminal Use Agreement.  D. 1-1 ¶ 44; D. 7 at 3.  The Terminal Development Agreement was between Eos Infraestructure and Compania Regional de Infraestructuras S.A. ("CRI") for the development of a terminal in Chile.  D. 1-1 ¶¶ 45-46.  Under the LNG Supply Agreement and LNG Terminal Use Agreement, Eos LNG acquired the rights to use the terminal and the exclusive right to supply LNG to the venture for twenty years.  D. 1-1 ¶ 51.  Second, Eos Infraestructure obtained capital contributions and various non-parties to this suit agreed to provide financing for the LNG project.  D. 7 at 3; see generally D. 1-1 ¶¶ 53-68.  Among others, Plaintiff Lois Kunian contributed $50,000 for a two percent equity interest in the LNG venture.  D. 1-1 ¶ 54.  Plaintiff

Keith Bainbridge ("Bainbridge") also invested and performed work in furtherance of the venture, leading him to acquire a seven percent equity interest.  D. 1-1 ¶ 55.

### B.  Defendants Allegedly "Freeze Out" Plaintiffs

On February 18, 2016, Smollon and Williams formed two new Delaware limited liability companies:  Eos Investment and Eos LNG Group (collectively the "Smollon-Williams companies").  D. 1-1 ¶ 71.  The equity in those companies is divided between Defendant Zubin Khambata and the three Defendant companies:  Tilden Energy, SFXS and Eagle Point.  D. 1-1 ¶ 72; see D. 6-4 ¶¶ 2, 7.  The Defendant companies are all controlled by or linked to Smollon and Williams.  D. 1-1 ¶ 73.  Smollon and Williams did not allocate any equity in the Smollon-Williams companies to Plaintiffs or to CRI.  D. 1-1 ¶ 77.

Plaintiffs found out about the Smollon-Williams companies on the day they were formed in an email from Smollon.[2]  D. 1-1 ¶ 116; see D. 12-13.  Smollon wrote to Kunian and Williams that Juan Francisco, a CRI executive, was "pushing ahead to move forward, with us as greatly reduced shareholders, in a new vehicle, 'Eos Investments' . . . .  He is going to want to form this entity and have it become the counterparty in the terminal deal, with him and his guys, and [a private equity firm] taking the big pieces and them putting the funding in."  D. 12-13 at 1.  Smollon added, "[w]e will get [what] the $500K get[s] us, plus some, so it won't be a home run, but it will leave Keith and Andrew's mom good, and give us each something that should pay a couple of million a year or more.  So, that's not too bad.  He want[s] to do the same with Eos LNG."  Id.  Plaintiffs interpreted Smollon's email to mean Smollon, Williams and Kunian would share equally

---

[2] The reference to the date of February 18, 2018 in D. 1-1 ¶ 116 appears to be a typographical error.  See D. 16 n.2.  The previous paragraph of the complaint refers to the same email as having been sent on February 18, 2016, D. 1-1 ¶ 115, and the referenced email is attached at D. 12-13 and dated February 18, 2016.

in any dilution of their membership interests in the Kunian companies.  D. 1-1 ¶ 115.  Plaintiffs allege that Smollon's claim that CRI, rather than Smollon and Williams, had initiated the formation of new entities was false.  D. 1-1 ¶ 119.

On February 26, 2016, Plaintiffs allege that Smollon and Williams supplanted the contract between the Kunian companies and CRI by executing a superseding contract between CRI and one of the Smollon-Williams companies, Eos Investment.  D. 1-1 ¶¶ 82-83.  The new contract with Eos Investment changed the developer, owner and operator of the Chilean terminal.  D. 1-1 ¶ 84. The new developer would be jointly owned by CRI and Eos Investment, rather than by CRI and one of the Kunian companies, as provided under the prior contract.  D. 1-1 ¶¶ 84-85.  Plaintiffs further allege that Smollon and Williams "usurped" Eos LNG's interest in the twenty-year LNG Supply and Terminal Use Agreements by executing replacement agreements with the Smollon-Williams companies.  D. 1-1 ¶¶ 89, 91.  Plaintiffs allege that Smollon and Williams undertook these actions without their knowledge.  D. 1-1 ¶¶ 88, 93.

According to Plaintiffs, despite rendering the Kunian companies worthless by executing these new contracts with CRI, Defendants did not refund the investments of Bainbridge, Lois Kunian or other investors in the Kunian companies but rather appropriated the funds as their own.[3] D. 1-1 ¶ 97-98.  Also according to Plaintiffs, in September 2016, Williams suggested he either refund Plaintiffs' investments or convert them into a one percent equity interest for Bainbridge and a half-percent equity interest for Lois Kunian.  D. 1-1 ¶ 98.

Between August 2015 and October 2017, Plaintiffs allege Eos Infraestructure transferred over three million dollars to CRI or its affiliates and Defendants applied those funds to meet the

---

[3] Plaintiffs allege that Smollon and Williams ultimately gave Bainbridge a partial refund "but failed to credit him with the increased valuation that the venture had by then accrued."  D. 1-1 n.4.

financial obligations of the Smollon-Williams companies under their contract with CRI. D. 1-1 ¶¶ 104-105. These funds included venture financing commitments that Plaintiffs allege Defendants diverted from the Kunian companies to the Smollon-Williams companies. D. 1-1 ¶ 95.

### C. Defendants Allegedly Mislead Plaintiffs About Their Equity in the Venture

According to Plaintiffs, "[t]o delay the inevitable discovery of their illicit misdeeds, Smollon and Williams [] repeatedly conveyed false and misleading assurances" to Plaintiffs that Plaintiffs would soon be awarded equity in the Smollon-Williams companies. D. 1-1 ¶ 109. Plaintiffs claim the "majority" of Defendants' false claims regarding Plaintiffs' shares were made via phone calls and emails directed to Kunian and Kunian's father in Massachusetts. D. 1-1 ¶ 110.

Kunian's father, Stephen Kunian, is an attorney based in Massachusetts who became involved in this dispute around 2017. D. 12 ¶ 52. On January 9, 2017, Stephen Kunian emailed Williams with a list of questions about the Smollon-Williams companies generally and as they related to Lois Kunian's shares. Id. In his response, Williams explained that "Eos Investment [] was formed as a mechanism to capitalize the business" after Eos Infraestructure failed to meet "certain funding/performance requirements" and "thus the opportunity for Eos Infraestructure to remain as the primary JV partner [in the LNG venture] expired." D. 12-15 at 1. Williams also wrote that at the time, "[s]hares ha[d] not been distributed to any of the owners, including the majority shareholder." Id. Plaintiffs allege that this statement was false because the Eos Investment Operating Agreement from February 2016 had already allocated one hundred percent of the interests. D. 1-1 ¶ 123. Williams responded to another email from Stephen Kunian in April 2017 stating that he anticipated being able to issue the shares in "roughly six weeks' time." D. 12-16 at 1. Stephen Kunian next heard from Williams on January 5, 2018, when Williams responded to an email from Stephen Kunian stating: "[w]e are in the definitive document stage – of which I

anticipate closing by mid-Feb[ruary]. All share issuance will occur ahead or in concurrence with that event, so its [sic] happening in the next month." D. 12 ¶ 58; D. 12-17.

Defendants also contacted Kunian in Massachusetts after he relocated here in May 2017. On August 26, 2018, Smollon emailed Kunian requesting copies of all bank statements from Eos Infrastructure for a due diligence package. D. 12-18 at 2. On August 31, 2018, Smollon concluded the email exchange: "[s]hortly we will have our final basis in Eos Investment [] established and we will all get papered up." D. 12-18 at 1. Plaintiffs allege that Williams called Kunian in Massachusetts at least seven times and Smollon called Kunian in Massachusetts at least sixty-two times. D. 11 at 15; see D. 12-12.

**IV.     Procedural History**

Plaintiffs instituted this action in Suffolk Superior Court on October 4, 2018. D. 1-1. Defendants removed the case to this Court. D. 1. Defendants have now moved to dismiss. D. 6. The Court heard the parties on the pending motion and took this matter under advisement. D. 18.

**V.      Discussion**

**A.      <u>Personal Jurisdiction</u>**

As a preliminary matter, the Court assesses the citizenship of the parties. Defendant Smollon is a citizen of New Jersey and Defendant Williams is a citizen of Virginia. D. 1 at 3. Eos Investment and Eos LNG Group are Delaware limited liability companies with principal places of business in Virginia. D. 6-4 ¶¶ 2, 7. Eos Investment and Eos LNG Group have four members, three of which are also limited liability companies: (1) Tilden Energy, (2) SFXS, (3) Eagle Point and (4) Defendant Zubin Khambata. Williams (of Virginia) is the sole member of Tilden Energy. <u>Id.</u> Smollon (of New Jersey) is the sole member of both SFXS and Eagle Point. D. 6-4 ¶¶ 4-5. Zubin Khambata is a citizen of India. D. 6-4 ¶ 6. Kunian moved to Massachusetts from out-of-

state in May 2017.  D. 12 ¶ 42.  Lois Kunian has lived in Massachusetts during all times relevant to this matter.  D. 12 ¶ 52.  Stephen Kunian, Kunian's father and a non-party in this matter, has also lived in Massachusetts during all times relevant to this matter.  Id.

Here, none of the Defendants are citizens or residents of Massachusetts.  "Prior to exercising personal jurisdiction over a nonresident defendant, a judge must determine that doing so comports with both the forum's long-arm statute and the requirements of the United States Constitution."  SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 290 (1980)).  The Court's analysis of the Massachusetts long-arm statute "precede[s] consideration of the constitutional question" of due process.  Id.

### 1.  *Massachusetts Long-Arm Statute*

Plaintiffs argue that the Court has personal jurisdiction over Defendants pursuant to sections 3(a) and 3(c) of the Massachusetts long-arm statute.  These sections provide for the exercise of personal jurisdiction over an individual in a cause of action "arising from the person's (a) transacting any business in this commonwealth . . . [or] (c) causing tortious injury by an act or omission in this commonwealth."  Mass. Gen. L. c. 223A, § 3.

The Court first considers whether § 3(a) confers jurisdiction on Defendants.  "For jurisdiction to exist under § 3(a), the facts must satisfy two requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant."  Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 317 (2018) (quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)).  The "transacting business" clause is construed "broadly."  Shipley Co., Inc. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990) (citation omitted).

Here, as alleged by Plaintiffs, Defendants have two sets of connections to Massachusetts. First, Williams and Smollon served as executives in two companies that are not parties to this suit that have principal places of business in Massachusetts. Second, Williams and Smollon communicated with Kunian and his father in Massachusetts regarding those companies and the Defendant companies. Even assuming these contacts satisfy the "transacting business" requirement of § 3(a), the Court concludes Plaintiffs' causes of action do not "arise from" those transactions. A "but for" test applies for determining when an injury "arises" from transacting business in Massachusetts. Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 65 (D. Mass. 2011) (citing Tatro, 416 Mass. at 770-71). Plaintiffs have not identified such a link between the Kunian companies' principal places of business or Williams and Smollon's communications into Massachusetts and their alleged injuries. Cf. Johnson v. Witkowski, 30 Mass. App. Ct. 697, 713 (1991) (finding a "rational nexus between the cause of action and the transaction of business in Massachusetts" where defendants had signed a contract in Massachusetts that gave rise to plaintiff's alleged injury). Rather, Plaintiffs allege that their injuries arose out of a series of contracts negotiated outside of Massachusetts. Plaintiffs seek to map the Kunian companies' principal places of business onto Williams and Smollon's actions in this venture, but cite no authority to suggest that those actions authorize personal jurisdiction under the long-arm statute. Moreover, even according to Plaintiffs, the purpose of the emails and phone calls directed into Massachusetts was to "delay the inevitable discovery of [Defendants'] illicit misdeeds." D. 1-1 ¶ 109. Plaintiffs' alleged injuries, however, remain rooted in those "misdeeds," rather than in any delay in discovering them. The Court concludes, therefore, that § 3(a) does not authorize personal jurisdiction over Defendants.

The Court next considers whether § 3(c) confers jurisdiction on Defendants. "[W]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has for jurisdictional purposes, acted within that state." The Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 320 (D. Mass. 2008) (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)); accord Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1084 (1st Cir. 1973). Plaintiffs allege that the email and telephone communications from the individual Defendants to Kunian, Lois Kunian and Stephen Kunian in Massachusetts satisfy the "act" requirement of § 3(c). Even assuming so, however, Plaintiffs have failed to satisfy the "arising from" requirement, which applies equally to § 3(c) and § 3(a). See, e.g., Med. Spectroscopy, Inc. v. Zamir, No. 1584CV03390, 2016 WL 4077289, at *2 (Mass. Super. Ct. June 14, 2016) (holding plaintiffs had not satisfied burden under § 3(a) or (c) where harm did not "arise from or out of" defendant's misconduct in Massachusetts). To the extent Plaintiffs' claims under § 3(c) are predicated on acts other than the Massachusetts communications, see D. 11 at 11-15, the Court concludes those acts also do not confer jurisdiction on Defendants because they did not occur in Massachusetts, nor were they directed to any Plaintiff living in Massachusetts. See, e.g., N.H. Ins. Guar. Ass'n v. Markem Corp., 424 Mass. 344, 347 n.3 (1997) (declining to consider § 3(c) as a basis for personal jurisdiction where defendant's conduct that allegedly caused plaintiff's injury occurred outside of Massachusetts). In sum, the Court holds that the Massachusetts long-arm statute does not confer jurisdiction on Defendants.

## 2. *Due Process*

Even if the long-arm statute were satisfied, that would not end the inquiry. "For jurisdiction to be proper, constitutional requirements of due process must be met." Clark, 728 F. Supp. at 822. The due process clause "protects an individual's liberty interest in not being subject to the binding

judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). A court may not assert jurisdiction unless "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297.

There are two types of personal jurisdiction to consider in the constitutional analysis: general and specific.[4] Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Id. (citation omitted). The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro-Med, 591 F.3d at 9 (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The Court must find that all three are present to assert specific personal jurisdiction over a defendant. See Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). The plaintiff bears the burden of proof on all three elements. See Rodriguez v. Samsung Electronics Co., Ltd., 827 F. Supp. 2d 47, 50 (D. Mass. 2011).

a)    Individual Defendants:  Smollon and Williams

*(1)    Relatedness*

The Court first considers relatedness for the individual Defendants, against whom Plaintiffs have brought claims for breach of contract, breach of fiduciary duty, civil conspiracy and fraudulent transfers. The relatedness inquiry focuses asks whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Astro-Med, 591 F.3d at 9. It is a "flexible, relaxed standard," id., but still requires a causal relationship

---

[4] Plaintiffs confirmed at oral argument that they are not asserting general jurisdiction.

between Plaintiffs' claim and Defendants' forum-related conduct, <u>Harlow</u>, 432 F.3d at 61.  Though

not precisely proximate cause, "due process demands something like a 'proximate cause' nexus."

<u>Id.</u> (quoting <u>Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.</u>,

295 F.3d 59, 65 (1st Cir. 2002)).  "[T]he defendant's in-state conduct must form an 'important, or

[at least] material, element of proof' in the plaintiff's case."  <u>Id.</u> (second alteration in original)

(quoting <u>Pleasant St. Corp.</u>, 960 F.2d at 1089).

 An instructive case on the issue of relatedness is <u>Platten v. HG Berm. Exempted Ltd.</u>, 437

F.3d 118 (1st Cir. 2006).  In <u>Platten</u>, the plaintiffs entered into employment agreements to join an

international consulting business incorporated in Pennsylvania.  <u>Id.</u> at 123-24.  One of the plaintiffs

was hired in the company's Boston office, where he worked for the entirety of his tenure and

received, often by phone and at least twice in person, directions from the Chief Executive Partner

of the partnership about partnership business.  <u>Id.</u> at 124.  When the plaintiffs left the partnership

and joined other ventures, the partnership denied them their full partnership shares.  <u>Id.</u> at 125.

The plaintiffs sued the partnership's successor-in-interest, HG Limited, in Massachusetts, despite

the fact that HG Limited was organized in and had its usual place of business in Bermuda.  <u>Id.</u> at

123.  The defendants claimed the plaintiffs were not entitled to their full shares because they had

violated the partnership's non-competition clause, while the plaintiffs argued that this claim was

"merely a tactic the [p]artnership used to wrongfully deny them their termination distributions."

<u>Id.</u> at 125.  Like Plaintiffs in this case, the plaintiffs in <u>Platten</u> sued the partnership and an

individual defendant (there, the Chief Executive Partner of the partnership) for breach of contract

and breach of fiduciary duty.  <u>Id.</u> at 123, 125.

 As to the breach of contract claim in <u>Platten</u>, the First Circuit concluded that plaintiffs had

failed to make out a prima facie case for specific jurisdiction because, aside from one plaintiff's

"conclusory" affidavit stating that he had entered into an agreement with the partnership in Massachusetts, there was no additional information on "whether the [p]artnership or HG Limited directed an out-of-state activity at the forum state, whether the parties' Agreement contemplated ongoing interaction between [the plaintiff] in Massachusetts and the [p]artnership or HG Limited in Bermuda, or whether the two other plaintiffs' claims [were] at all related to the [p]artnership's and HG Limited's contacts in Massachusetts." Id. at 136-37 (internal citations omitted). There were also no allegations that the defendants had come to Massachusetts to negotiate or sign the agreement. Id. at 136. The court determined that the plaintiffs' claim for specific jurisdiction over the breach of contract claim failed for want of relatedness. Id.

Here, the breach of contract, as alleged, resulted from Smollon and Williams breaching their partnership agreements with the Kunian companies, which have principal places of business in Massachusetts. Kunian further alleges, as part of the breach of contract claim, that he has been "deprived of his right to participate in management and oversight of the LNG export/import venture." D. 1-1 ¶ 140. Like in Platten, although at least one Plaintiff here (Lois Kunian) was in Massachusetts when Defendants allegedly violated their contractual obligations to the Kunian companies, there are no allegations that the contracts at issue—for the Kunian companies or the Smollon-Williams companies—were signed or negotiated in Massachusetts or triggered by activities in Massachusetts. See Lawson v. Affirmative Equities Co., L.P., 341 F. Supp. 2d 51, 59 (D. Mass. 2004) (explaining that in considering specific jurisdiction over contract claims, the Court examines "whether the defendant's forum-based activities are instrumental in the formation of the contract") (citation and internal quotation marks omitted); see also Walden v. Fiore, 571 U.S. 277, 284-85 (2014) (stating that, to exercise specific jurisdiction, "the relationship must arise out of contacts that the defendant himself creates with the forum State" and that the defendant's

"minimum contacts" must arise out of "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there") (citations and internal quotation marks omitted) (emphasis in original). Plaintiffs also have not explained how Kunian's alleged deprivation of rights in the venture is related to any actions by Defendants that targeted Massachusetts or took place in the state. The Court, therefore, cannot exercise specific jurisdiction for the breach of contract claim.

As to the breach of fiduciary duty claim, Plaintiffs allege that Smollon and Williams breached their duties "to their fellow partners and fellow members of Eos LNG and Eos [Infrastructure]" by "freezing the Plaintiffs out of the LNG export/import Venture . . . , needlessly creating Eos Investment Group and Eos LNG Group, usurping the assets of Eos LNG and Eos [Infrastructure], and depriving the Plaintiffs of their share of the rights, value and corresponding equity enjoyed in those entities." D. 1-1 ¶¶ 141-42. For this claim, Plaintiffs have not explained how their cause of action is related to any transaction with Massachusetts, except for Eos LNG and Eos Infraestructure having their principal places of business in Massachusetts. Again, to return to the example of <u>Platten</u>, the First Circuit held there was no specific jurisdiction over the breach of fiduciary duty claim because "[a] breach of fiduciary duty occurs [in the state] where the fiduciary acts disloyally." <u>Platten</u>, 437 F.3d at 138 (second alteration in original) (quoting <u>Phillips Exeter Acad. v. Howard Phillips Fund</u>, 196 F.3d 284, 291 (1st Cir. 1999)). The court in <u>Platten</u> further explained that "for minimum contacts analysis, even if the effects of the alleged breach were felt in Massachusetts, there [was] no evidence in the record that the alleged breach itself 'occurred' in this state . . . as opposed to, say, Bermuda, where HG Limited has its usual place of business, or Pennsylvania, from whence [the individual defendant] allegedly controlled the [p]artnership." <u>Id.</u> Here, Defendants are not alleged to have frozen out Plaintiffs through any

contacts with Massachusetts, but rather by signing and negotiating new contracts either in Chile or elsewhere outside the forum state. Like in <u>Platten</u>, therefore, the Court cannot exercise specific jurisdiction over the individual Defendants for the claim of a breach of fiduciary duty.

For the claim of civil conspiracy against Smollon and Williams, Plaintiffs rely upon the same facts as for the breach of contract and fiduciary duty claims, <u>see</u> D. 1-1 ¶ 147, so the foregoing analysis applies equally to this claim. Relatedness has not been satisfied.

For the claim of fraudulent transfers, Plaintiffs allege that "Smollon and Williams assigned or transferred equity interests in the Venture to the Defendants Khambata, Tilden Energy, SFXS [] and Eagle Point in order to place those assets beyond the reach of creditors and, in particular, to conceal them from the Plaintiffs and prevent the plaintiffs from reaching those interests." D. 1-1 ¶ 153. Once again, there are no allegations that tie this allegedly fraudulent transfer to any Massachusetts-based conduct, or conduct that targeted Massachusetts, by Smollon and Williams. The alleged assignment and transfer of interests occurred either in Chile or elsewhere outside Massachusetts. While it is true that the Kunian companies had principal places of business in Massachusetts, there is no causal link between the allegedly fraudulent transfer of those companies' assets and Defendants' contacts with Massachusetts. The Court, therefore, concludes that relatedness has not been satisfied for Smollon and Williams for this claim.

Lastly, with respect to relatedness, the Court considered the 2017 and 2018 emails and telephone calls by the individual Defendants to Kunian and Kunian's father in Massachusetts. Plaintiffs reference these communications in their motion papers but do not specify to which claims they relate. As explained above, the correspondence does not form the basis of Plaintiffs' complaints, but rather emerged in the aftermath of Plaintiffs' alleged injuries. Like in <u>Platten</u>, here Plaintiffs "[have] not allege[d] reasonable reliance on the purported misrepresentations [in the

correspondence]; thus, any harm that [the plaintiffs] suffered did not arise out of those misrepresentations, but instead out of the [defendant's] alleged breach of the [contract] . . . ." Platten, 437 F.3d at 138. The correspondence, therefore, is insufficient to show relatedness. To the extent Plaintiffs are claiming Kunian's father was acting as an attorney in his correspondence with Defendants,[5] the Court concludes those contacts are also insufficient. Cf. Walden, 571 U.S. at 291 (holding that defendants' attorney's contact of plaintiff in the forum state was "precisely the sort of 'unilateral activity' of a third party that 'cannot satisfy the requirement of contact with the forum State'") (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

### (2) *Purposeful Availment*

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 246 (D. Mass. 2012) (quoting Sawtelle, 70 F.3d at 1391). Purposeful availment turns on voluntariness and foreseeability. C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014). "Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 36 (1st Cir. 2016) (citations and internal quotation marks omitted) (emphasis in original). "Foreseeability requires that a defendant's contacts with the forum state are 'such that [the defendant] could reasonably anticipate being haled into court there.'" Id. (alteration in original) (quoting Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007) (internal quotation marks omitted)).

---

[5] Plaintiffs repeatedly refer to Stephen Kunian as "an attorney and Kunian's father." D. 11 at 14; see D. 12 ¶ 52. Defendants also refer to Kunian as having "enlisting the aid of a Massachusetts attorney" when referring to Stephen Kunian's involvement in the case. D. 16 at 5.

Plaintiffs argue that "[D]efendants purposefully availed themselves of Massachusetts by voluntarily joining and working on behalf of a venture with a principal place of business in Massachusetts, and then stealing the opportunities from that venture for their own gain, while sending repeated and regular false communication into Massachusetts, directed to residents of this Commonwealth." D. 11 at 18. Defendants counter that "by entering into transactions with [Plaintiffs] involving LNG services and investments in Texas and Chile, [Defendants] did not volunteer to be [haled] into a Massachusetts court." D. 7 at 11.

The Court concludes that the allegations about Smollon and Williams' ties to Massachusetts are insufficient to show purposeful availment. Plaintiffs' claims do no "arise[] out of or relate[] directly to" their limited contacts with Massachusetts and thus are not deemed relevant to the purposeful availment analysis. Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016). With respect to the Kunian companies, although the companies had principal places of business in Massachusetts, Smollon and Williams never travelled to Massachusetts for business, signed contracts in Massachusetts, owned or leased property in Massachusetts, maintained offices, bank accounts or employees in Massachusetts, advertised in Massachusetts or conducted business in Massachusetts. Given their limited interactions with the forum, it was not foreseeable that they would be "haled into court [here]." Baskin Robbins, 825 F.3d at 36. Smollon and Williams also did not direct Kunian to act on their behalf in Massachusetts, so his undertakings in the forum state cannot be attributed to them. Cf. C.W. Downer & Co., 771 F.3d at 67 (holding that where a defendant had retained a plaintiff to undertake "extensive activities" on its behalf in Massachusetts, plaintiff's activities in Massachusetts were not "unilateral" and satisfied the requirement of purposeful availment). With respect to Smollon and Williams' correspondence with Kunian and Kunian's father, as explained above, that

correspondence occurred after the alleged breaches and Plaintiffs did not rely upon it. Furthermore, Smollon and Williams' contacts with Kunian in Massachusetts after May 2017 were based on his unilateral decision to move to Massachusetts and thus are not considered "voluntary." See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 716 (1st Cir. 1996) (citing Burger King, 471 U.S. at 475) (noting that "[t]he defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or a third person"). Accordingly, the Court concludes Plaintiffs have not met their burden to show that Smollon and Williams' "contacts with Massachusetts crossed the purposeful availment threshold," such that the Court could exercise jurisdiction consistent with due process. Baskin Robbins, 825 F.3d at 39.

### (3)     Reasonableness

Finally, the Court considers reasonableness for the individual Defendants. The reasonableness inquiry is based on a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67). "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak, 94 F.3d at 717.

As to the first factor, "[t]he First Circuit has held that the first factor is 'only meaningful where a party can demonstrate some kind of special or unusual burden.'" Risktimetry Analytics, LLC v. Altaira, LLC, 752 F. Supp. 2d 141, 147 (D. Mass. 2010) (quoting Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)) (finding that travel between Utah and Massachusetts was not a special or

unusual burden).  The Court concludes Defendants have not demonstrated an unusual burden here. That determination, however, does not compel a decision for Plaintiffs, because the rest of the Gestalt factors taken as a whole favor Defendants.

With respect to the second factor, Massachusetts does not have a strong interest in adjudicating this case because of the tenuous connections between the alleged breaches and the state.  See Sawtelle, 70 F.3d at 1395 (explaining that while "a forum state has a demonstrable interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, [the forum state] has a far less compelling interest in the prosecution of a . . . suit stemming from an injury that occurred outside of its borders") (internal citation omitted).  For the third factor, Plaintiffs might litigate this case in Chile, where the key contracts were negotiated; Virginia, where the Smollon-Williams companies have principal places of business and Williams is a citizen; or Delaware, where both the Smollon-Williams and Kunian companies are incorporated.[6]  As to the fourth factor, as is common in suits between private parties, "the interest of the judicial system in the effective administration of justice does not appear to cut in either direction."  Ticketmaster, 26 F.3d at 211.  Fifth, the Court considers Massachusetts' interest in "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."  Burger King, 471 U.S. at 473. Because none of the actions giving rise to Plaintiffs' alleged injuries occurred in Massachusetts or were directed at Massachusetts, this is not an instance where social policy compels adjudication in Massachusetts.

---

[6] The Court notes that Plaintiffs argue that Texas would be an inappropriate forum for resolution, D. 11 at 19, and that Chile may not have "courts of sufficient and competent jurisdiction to entertain this dispute," D. 11 at 20, but do not address the suitability of Virginia or Delaware.

b) Corporate Defendants: Eos Investment, Eos LNG Group, Tilden Energy, SFXS Marketing and Eagle Point

Plaintiffs contend that the corporate Defendants are all subject to jurisdiction by virtue of the actions taken on their behalf by the individual Defendants. D. 11 at 16. Plaintiffs do not allege any connection between the corporate Defendants and Massachusetts beyond the actions of Smollon and Williams. See generally D. 11 at 16-17. Because the Court has already concluded that Smollon and Williams' contacts with Massachusetts are insufficient to support the exercise of personal jurisdiction, the Court holds that it lacks personal jurisdiction over the Smollon-Williams companies for the same reasons. See Duncan v. Nu-Life, Inc. of Ill., No. 97 Civ. 7350(DLC), 1998 WL 66002, at *5 (S.D.N.Y. Feb. 17, 1998) (holding that a lack of nexus between defendants' actions and the forum state "preclude[d] the exercise of specific jurisdiction over either defendant, since the corporation and the individual [were] alleged to have had identical contacts with the state and [were] charged with the same wrongful acts"). The same analysis applies to the Defendant single-member limited liability corporations (Tilden Energy, SFXS and Eagle Point). See M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 279 n.8 (D. Mass. 2008) (explaining that "[t]he relevant case law has developed almost exclusively in the context of corporations and corporate officers, but there appears to be no reason why the same principles should not apply with equal force to a limited liability company and its members").

**B.** **Venue**

Because the Court lacks personal jurisdiction over Defendants in this matter, it need not reach the issue of proper venue. See Killion, 421 F. Supp. 2d at 258 (declining to reach defendant's argument for dismissal on the grounds of improper venue and *forum non conveniens* after holding that the court lacked personal jurisdiction over defendant).

**VI.     Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss pursuant to

Fed. R. Civ. P. 12(b)(2), D. 6.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge